UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

RONELL AGEE,

               Petitioner,

    -vs-

J. BRANDT

               Respondent.
_____

**DECISION AND ORDER**
**No. 10-CV-06303T**

## I.   Introduction

*Pro se* Petitioner Ronell Agee ("Petitioner") has filed a timely petition for a writ of habeas corpus under 28 U.S.C. § 2254 challenging the constitutionality of his custody pursuant to a judgment entered February 17, 2005, in New York State, Supreme Court, Monroe County (Hon. Joseph D. Valentino), convicting him, after a jury trial, of Assault in the First Degree (N.Y. Penal Law ("Penal Law") § 120.10 [3]).  Petitioner was sentenced as a second felony offender to a determinate term of fifteen years imprisonment, with five years of post-release supervision.

For the reasons stated below, habeas relief is denied and the petition is dismissed.

## II.   Factual Background and Procedural History

Under Indictment No. 2004-0372, Petitioner was charged with two counts of Assault in the First Degree in violation of Penal Law §§ 120.10 [1], [3]) (intentional assault and depraved indifference assault).  The charges arose from a stabbing incident that occurred

on April 15, 2004 in the City of Rochester, New York.  See Resp't
App. B at 6-7.

Prior to the date of the incident, Petitioner and his friends
went to the home of Harriett Williams located at 382 Arnett
Boulevard looking for her adult son, Lynn Henderson ("Henderson").
Petitioner and his friends threatened Henderson, and Harriett
Williams called the police.  Trial Trans. [T.T.] 477, 481-489.

On the date of the incident, Harriett Williams' nephew, Byron
Williams, arrived at 382 Arnett Boulevard just after Harriett
Williams had returned home from work.  Byron Williams told his aunt
that the people who had "jumped" Henderson were trying to get a
group together to beat up Henderson.  In an effort to settle the
on-going dispute, Henrietta Williams told her nephew to stay in the
house while she went for her husband, Lucius Williams, and his
brother, Chris Williams, to speak to the men who were harassing her
son and nephew.  Henrietta Williams picked up her husband and Chris
Williams (who were both at Chris Williams' house), and then picked
up Henderson (who was at his girlfriend's house).  The four
individuals then returned to 382 Arnett Boulevard and walked down
Arnett Boulevard toward a group of individuals who had congregated
outside 366 Arnett Boulevard.  T.T. 490-493, 646-650.

As the four individuals neared the larger group, Henderson
exchanged words with one of the men in the group and picked up a
bottle and threw it.  The bottle broke Tony Porter's ("Porter") car

window.  Daniel Dixon ("Dixon"), who was one of the men who came to Henrietta Williams' home looking for Henderson, threw a bottle back and then ran away.  T.T. 493-494, 496-501, 857.  While Henrietta and Lucius Williams were speaking to Porter about having her car window fixed, Petitioner suddenly appeared and approached Henrietta and Lucius Williams.  Petitioner then approached Henrietta Williams, stating, "what's up, nigger," and then swung around her and stabbed Lucius Williams.  Lucius Williams testified that he turned around just in time to see his attacker, whom he did not know, but had seen around the neighborhood for years.  Lucius Williams did not realize he had been stabbed until he began having trouble breathing and saw blood.  Lucius Williams said nothing to Petitioner before or during the attack.  Petitioner stabbed Lucius Williams several times with a knife that had a black handle and silver blade.  T.T. 502-506, 653-656, 688, 693, 695.

Chris Williams and Henderson approached the group of men and began fighting with Petitioner.  At some point during the altercation, Petitioner was also stabbed.  Chris Williams helped Harriett Williams bring her husband back to 382 Arnett Boulevard, and Chris Williams then took Lucius Williams to the hospital. T.T. 503-507, 524.

Upon arrival at Strong Memorial Hospital, Lucius Williams had three stab wounds: one to his anterior abdominal wall, one to his left shoulder, and one to his left ventricle.  T.T. 719.  The

Carhartt-brand jacket Lucius Williams was wearing that night also showed signs of three separate knife wounds -- two holes in the front and one in the back.  T.T. 660.  In the emergency room, Lucius Williams was intubated, given a blood transfusion, had a chest tube inserted, and had fluid removed from his pericardial sack with a needle.  Lucius Williams was categorized as a level one trauma patient, indicating that his condition was life-threatening. Shortly after his arrival, Lucius Williams underwent surgery to repair a laceration to his left ventricle.  Dr. Carolyn Jones performed the surgery, cutting the skin over Lucius Williams' breastbone, sawing his breastbone, opening his pericardium, and exploring his heart to determine the source of the blood. Dr. Jones discovered a laceration at the base of the heart, and closed it with two stitches and inserted a drain to avoid fluid build-up.  Dr. Jones then closed the breastbone, wiring it shut. The surgery performed on Lucius Williams lasted approximately three hours, and he remained at Strong Memorial for the following four days.  Dr. Jones testified that Lucius Williams' injuries were caused by a sharp object and that had he not sought medical attention after the stabbing, he would have died.  T.T. 720-730.

Meanwhile, while Lucius Williams was being treated at the hospital, members of the Rochester Police Department had arrived at 366 Arnett Boulevard, secured the scene, and searched for evidence. A knife with a black handle and silver blade was recovered from the

middle of Arnett Boulevard.   A second knife handle was also recovered on Warwick Street nearby.   Police also observed what appeared to be blood on the sidewalk outside of 366 Arnett Boulevard.   Lucius Williams identified the knife recovered from Arnett Boulevard as the one Petitioner used to stab him.   T.T. 539-543, 570, 611-613, 659.

At trial, Petitioner presented three witnesses:   Trisha Dailey, Lamar Parnell, and Dixon.   Although varying greatly in their recall of the events of April 15, 2004, all three witnesses testified that the group of people who approached them as they stood near 366 Arnett Boulevard consisted of approximately ten men and no women.   The group was swearing and some were brandishing knives.   They all recalled a bottle being thrown and a car window breaking.   However, none of these witnesses recounted the stabbing of Lucius Williams.   They each testified that after the bottles were thrown, Petitioner ran and was pursued by the large group of men with knives.   According to these witnesses, at some before or during the chase, Petitioner fell and was stabbed multiple times. Dixon testified that Lucius Williams was one of the people who chased Petitioner and that he was involved in the stabbing of Petitioner.   Dixon also testified that it was Chris Williams who was wearing the Carhartt-brand jacket and that Lucius Williams was dressed in black.   T.T. 765-766, 784-788, 835-847, 874.

At the close of his trial, Petitioner was found guilty of depraved indifference assault (Penal Law § 120.10 [3]) and not guilty of intentional assault (Penal Law § 120.10 [1]). T.T. 1110. He was subsequently sentenced as a second felony offender to a determinate term of fifteen years imprisonment, with five years of post-release supervision. Sentencing Mins. [S.M.] 5, 13.

The Appellate Division, Fourth Department unanimously affirmed the judgment of conviction, and leave to appeal was denied. <u>People v. Agee</u>, 57 A.D.3d 1486 (4th Dep't 2008) (Resp't App. F); <u>lv. denied</u>, 12 N.Y.3d (2009) (Resp't App. I).

This habeas corpus petition followed, wherein Petitioner seeks relief on the following grounds: (1) the evidence at trial was legally insufficient to support his conviction; and (2) ineffective assistance of trial counsel. <u>See</u> Pet. ¶ 22A, B (Dkt. No. 1). Petitioner's claims are exhausted and properly before this Court.

## III. General Principles Applicable to Habeas Review

### A.   The AEDPA Standard of Review

Under the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), a federal court may grant habeas relief to a state prisoner only if a claim that was "adjudicated on the merits" in state court "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or if it "was based on an

unreasonable determination of the facts in light of the evidence presented in the state court proceeding." § 2254(d)(2).   A state court decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 413 (2000).   The phrase, "clearly established Federal law, as determined by the Supreme Court of the United States," limits the law governing a habeas petitioner's claims to the holdings (not *dicta*) of the Supreme Court existing at the time of the relevant state-court decision. Williams, 529 U.S. at 412; accord Sevencan v. Herbert, 342 F.3d 69, 73-74 (2d Cir. 2002), cert. denied, 540 U.S. 1197 (2004).

A state court decision is based on an "unreasonable application" of Supreme Court precedent if it correctly identified the governing legal rule, but applied it in an unreasonable manner to the facts of a particular case. Williams, 529 U.S. at 413; see also id. at 408-10.  "[A] federal habeas court is not empowered to grant the writ just because, in its independent judgment, it would have decided the federal law question differently." Aparicio v. Artuz, 269 F.3d 78, 94 (2d Cir. 2001).   Rather, "[t]he state court's application must reflect some additional increment of incorrectness such that it may be said to be unreasonable." Id.

This increment "need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." Francis S. v. Stone, 221 F.3d 100, 111 (2d Cir. 2000) (internal quotation marks omitted).

Under AEDPA, "a determination of a factual issue made by a State court shall be presumed to be correct. The [petitioner] shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); see also Parsad v. Greiner, 337 F.3d 175, 181 (2d Cir. 2003) ("The presumption of correctness is particularly important when reviewing the trial court's assessment of witness credibility."), cert. denied sub nom. Parsad v. Fischer, 540 U.S. 1091 (2003). A state court's findings "will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." Miller-El v. Cockrell, 537 U.S. 322, 340 (2003).

### B.   Exhaustion Requirement

"An application for a writ of habeas corpus on behalf of a person in custody pursuant to a judgment of a State court shall not be granted unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State. . . ." 28 U.S.C. § 2254(b)(1)(A); see, e.g., O'Sullivan v. Boerckel, 526 U.S. 838, 843-44 (1999); accord, e.g., Bossett v. Walker, 41 F.3d 825, 828 (2d Cir.1994), cert. denied, 514 U.S. 1054 (1995). "The exhaustion

requirement is not satisfied unless the federal claim has been 'fairly presented' to the state courts." <u>Daye v. Attorney General</u>, 696 F.2d 186, 191 (2d Cir. 1982) (*en banc*), <u>cert. denied</u>, 464 U.S. 1048 (1984).

### C.   The Adequate and Independent State Ground Doctrine

A procedural default generally bars a federal court from reviewing the merits of a habeas claim. <u>Wainwright v. Sykes</u>, 433 U.S. 72 (1977). Federal habeas review is prohibited if a state court rests its judgment on a state law ground that is "independent of the federal question and adequate to support the judgment." <u>Cotto v. Herbert</u>, 331 F.3d 217, 238 (2d Cir. 2003) (quoting <u>Coleman v. Thompson</u>, 501 U.S. 722, 729 (1991)); <u>accord</u> <u>Jones v. Stinson</u>, 229 F.3d 112, 117 (2d Cir. 2000). A state procedural bar qualifies as an "independent and adequate" state law ground where "'the last state court rendering a judgment in the case clearly and expressly states that its judgment rests on a state procedural bar.'" <u>Levine v. Comm'r of Corr. Servs.</u>, 44 F.3d 121, 126 (2d Cir. 1995) (quoting <u>Harris v. Reed</u>, 489 U.S. 255, 262 (1989)). A state procedural rule will be adequate to preclude habeas review if it is "firmly established and regularly followed," unless the state rule is "exorbitant." <u>Lee v. Kemna</u>, 534 U.S. 362, 376 (2002) (quoting <u>James v. Kentucky</u>, 466 U.S. 341, 348 (1984)).

A federal court may review a claim, notwithstanding the petitioner's default, if he "can demonstrate cause for the default

and actual prejudice as a result of the alleged violation of federal law." Coleman, 501 U.S. at 750; see also Levine, 44 F.3d at 126; Grey v. Hoke, 933 F.2d 117, 121 (2d Cir. 1991). A petitioner may establish cause by pointing to "some objective factor external to the defense [that] impeded counsel's efforts to comply with the State's procedural rule." Murray v. Carrier, 477 U.S. 478, 488 (1986); accord Coleman, 501 U.S. at 753. A petitioner suffers actual prejudice if the outcome of the case would likely have been different had the alleged constitutional violation not occurred. See Reed v. Ross, 468 U.S. 1, 12 (1984). Alternatively, even if the petitioner is unable to show cause and prejudice, the court may consider the claim if he can demonstrate that failure to do so will result in a "fundamental miscarriage of justice." Coleman, 501 U.S. at 750.

## IV.  Petitioner's Claims

## 1.  Legally Insufficient Evidence

Petitioner argues, as he did on direct appeal, that the evidence adduced at trial was legally insufficient to support his conviction for assault in the first degree (depraved indifference assault). In particular, he alleges that the prosecution failed to prove beyond a reasonable doubt that he acted recklessly and with the requisite depravity necessary for conviction. See Pet. ¶ 22A; see also Pet'r Br. on Appeal at Resp't Appendices A, D. The Appellate Division, Fourth Department rejected this claim on a

state procedural ground because Petitioner failed to properly preserve the issue for appellate review. See Agee, 57 A.D.3d at 1486. Consequently, as discussed below, this claim is procedurally defaulted from review by this Court.

A federal court may not review a question of federal law decided by a state court if the state court's decision rested on a state law ground that is independent of the federal question and adequate to support the judgment. See Coleman v. Thompson, 501 U.S. 722, 751 (1991). Here, the state court relied on New York's preservation rule (codified at CPL § 470.05 [2]) to deny Petitioner's claim because it had not been properly preserved for appellate review. See Agee, 34 A.D.3d at 1486. The Second Circuit has determined that CPL § 470.05 [2] is an independent and adequate state procedural ground. See Garcia v. Lewis, 188 F.3d 71, 79-82 (2d Cir. 1999); Velasquez v. Leonardo, 898 F.2d 7, 9 (2d Cir. 1990). The Appellate Division, Fourth Department's reliance on New York's preservation rule is an adequate and independent state ground which precludes this Court's review of Petitioner's claim.

This Court, however, may reach the merits of Petitioner's claim, despite the procedural default, if he can demonstrate cause for the default and prejudice, or that failure to consider the claim will result in a fundamental miscarriage of justice. See Coleman, 501 U.S. at 750. Liberally construing the petition, Petitioner alleges ineffective assistance of trial counsel as cause

-11-

for the default. <u>See</u> Pet. ¶ 22B.  A claim of ineffective assistance of counsel may establish cause for a procedural default. <u>See</u> <u>Edwards v. Carpenter</u>, 529 U.S. 446, 451 (2000); <u>McCleskey v. Zant</u>, 499 U.S. 467, 494 (1991); <u>United States v. Frady</u>, 456 U.S. 152, 168 (1982).  However, in order to constitute cause, counsel's ineffectiveness must itself rise to the level of a constitutional violation. <u>McCleskey</u>, 499 U.S. at 494 ("Attorney error short of ineffective assistance of counsel, however, does not constitute cause and will not excuse a procedural default.").  Here, Petitioner's stand-alone ineffective assistance of counsel claim is meritless (see section "IV, 2" below).  Consequently, he cannot establish "cause" to excuse the procedural default.  Moreover, Petitioner has failed to demonstrate that this Court's failure to review the claim will result in a fundamental miscarriage of justice.

Accordingly, Petitioner's sufficiency of the evidence claim is dismissed as procedurally defaulted.

## 2.   Ineffective Assistance of Trial Counsel

Petitioner argues, as he did on direct appeal, that he received ineffective assistance of counsel based upon trial counsel's failure to renew his motion for a trial order of dismissal with respect to the second count of the indictment (depraved indifference assault). <u>See</u> Pet. ¶ 22B. The Appellate Division, Fourth Department rejected this claim on the merits,

finding, in relevant part, that, "viewing defense counsel's representation as a whole, we conclude that defendant received effective assistance of counsel." Agee, 57 A.D.3d at 1487. As discussed below, this claim is meritless.

To establish that he was deprived of his Sixth Amendment right to the effective assistance of trial counsel, a petitioner must show that (1) his attorney's performance was deficient, and that (2) this deficient performance prejudiced his defense. Strickland v. Washington, 466 U.S. 668, 687 (1984). Deficiency is measured by an objective standard of reasonableness, and prejudice is demonstrated by a showing of a "reasonable probability" that, but for counsel's unprofessional errors, the result of the trial would have been different. Id. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome of the proceeding." Id. To succeed, a petitioner challenging counsel's representation must overcome a "strong presumption that [his attorney's] conduct falls within the wide range of reasonable professional assistance." Id. at 689. A reviewing court "must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." Id. Here, Petitioner cannot meet the two-pronged standard set forth in Strickland.

The record before this Court reflects that, at the close of the People's case, defense counsel moved for a trial order of

dismissal with regard to the first and second counts of the indictment.[1]  T.T. 740-742.  The prosecution opposed the defense's motion.  With respect to the second count of the indictment (charging depraved indifference assault), the prosecutor stated:

> all of the evidence put forward to support each and every element of those charges, specifically, that statements by the doctor that the injury was life threatening, certainly, the defendant had cause, based on the testimony of the witnesses and can be seen by the jury, that he caused circumstances evincing a depraved indifference to human life a grave risk of death to another person, that being Lucius Williams.

T.T. 743.  In response, the trial court judge stated:

> I don't know, Ms. Hart, what evidence you presented to show that Mr. Agee acted recklessly.  You presented evidence here . . . to show that Mr. Agee lunged at Lucius Williams; that he uttered words; that Lucius Williams was stabbed three times.  That was it.  I don't know if there is any evidence that has been indicated that would support the reckless conduct charge.

T.T. 744.  After making additional arguments in support of her position, the prosecutor requested that the trial court reserve decision on the issue.  T.T. 745.  The trial court complied with the prosecutor's request, indicating that it needed to research the issue.  T.T. 747.  The following day, after having listened to the parties' arguments and having conducting research, the trial court

---

[1]  To reiterate, the first count of the indictment charged Petitioner with intentional assault, and the second count of the indictment charged Petitioner with depraved indifference assault.  See Resp't App. B at 6-7.

denied defense counsel's request for a trial order of dismissal. T.T. 756-758.  The defense then presented three witnesses, at the close of which defense counsel failed to renew his motion for a trial order of dismissal.  Given the circumstances -- i.e., that the trial court had already considered the defense's position with respect to the depraved indifference assault count and rejected it prior to the defense's case -- it was not unreasonable for defense counsel not have done so.

Additionally, defense counsel's decision cannot be considered unreasonable given the theory of defense pursued at trial.  The record reflects that Petitioner's defense was based on the theory that he was justified in his actions, or, in the alternative, that it was not he who committed the assault on Lucius Williams. Because either of these defenses, if believed by the jury, would have been a complete defense to depraved indifference assault, defense counsel could have reasonably decided to allow the charge to be considered by the jury with the hopes that the jury would find Petitioner was justified in stabbing Lucius Williams, or, that there was a reasonable doubt that it was Petitioner who stabbed Lucius Williams.

In any event, Petitioner fails to demonstrate that the outcome of the trial would have been different had the renewed motion been made with respect to the second count of the indictment.  Upon motion of the defendant the trial court may issue a trial order of

dismissal "dismissing any count of an indictment upon the ground that the trial evidence is not legally sufficient to establish the offense charged therein or any lesser included defense . . . ." N.Y. Crim. Proc. Law § 290.10 [1].  The trial record before this Court includes the testimony of various witnesses to the assault, including the victim himself, which establishes that the attack on Lucius Williams was spontaneous, unprovoked, and impulsive.  The trial record also includes both physical and medical evidence consistent with the interpretation of the facts as presented by the prosecution.  Thus, there is no basis for this Court to conclude that a renewed motion to dismiss at the conclusion of the defense's case would have been successful.  See e.g., Delatorres v. Lempke, 08-CV-0183, 2011 U.S. Dist. LEXIS 33034, *11-12 (W.D.N.Y. March 29, 2011) (denying petitioner's ineffective assistance of trial counsel claim based upon counsel's failure to renew her motion to dismiss where petitioner failed to demonstrate that the outcome would have been different had the renewed motion been made).

Accordingly, this Court cannot find that the state court's adjudication of this claim was contrary to or an unreasonable application of settled Supreme Court law.  Petitioner's ineffective assistance of counsel claim is therefore dismissed as meritless.

## V.   Conclusion

For the reasons stated above, the petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Dkt. No. 1) is denied,

and the petition is dismissed.  Because Petitioner has failed to make "a substantial showing of a denial of a constitutional right," 28 U.S.C. § 2253(c)(2), the Court declines to issue a certificate of appealability.  See, e.g., Lucidore v. New York State Div. of Parole, 209 F.3d 107, 111-113 (2d Cir. 2000).  The Court also hereby certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this judgment would not be taken in good faith and therefore denies leave to appeal as a poor person.  Coppedge v. United States, 369 U.S. 438 (1962).

Petitioner must file any notice of appeal with the Clerk's Office, United States District Court, Western District of New York, within thirty (30) days of the date of judgment in this action.  Requests to proceed on appeal as a poor person must be filed with United States Court of Appeals for the Second Circuit in accordance with the requirements of Rule 24 of the Federal Rules of Appellate Procedure.

**IT IS SO ORDERED.**

S/Michael A. Telesca

_____
HONORABLE MICHAEL A. TELESCA
United States District Judge

DATED:    August 26, 2011
          Rochester, New York